Rena Deford Hays was convicted for driving under the influence of alcohol and was fined $300 and court costs. On this appeal from that conviction, the issue is whether a motorist must be arrested for DUI before being taken into custody and required to submit to a chemical test for intoxication.
For purposes of appeal, the facts have been stipulated. The city, the appellee, has not filed a brief.
Around 4:00 on the morning of September 7, 1986, Jacksonville Police Officer Paul Starr stopped the defendant after he observed the vehicle she was driving "weaving." The officer requested the defendant's driver's license and "noticed a strong odor of alcoholic beverage coming from within the car." The defendant failed two field sobriety tests (touching her nose and standing on one leg). Officer Starr placed her under arrest for "improper lane usage" and transported her to the police station where she was given a breath test on an Intoxilizer 5000. The defendant's blood alcohol level was .16 percent. Only then was the defendant arrested for DUI.
Under Alabama's Chemical Test for Intoxication Act (Implied Consent Law) Ala. Code 1975, § 32-5-191, et seq., a motorist must have been "lawfully arrested" before any chemical test to determine intoxication is conducted in order to authorize the admission into evidence of the test results. Ex parte Love,513 So.2d 24 (Ala. 1987), on remand, 513 So.2d 31 (Ala.Cr.App. 1987). The issue in this case is whether the defendant was properly arrested.
Ala. Code 1975, § 32-1-4(a), provides:
 "(a) Whenever any person is arrested for a violation of any provisions of this title punishable as a misdemeanor, the arresting officer shall . . . take the name and address of such person and the license number of his motor vehicle and issue a *Page 893 
summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice . . . Such officer shall
thereupon and upon the giving by such person of a sufficient written bond, approved by the arresting officer, to appear at such time and place, forthwith release him from custody." (Emphasis added.)
"The clear import of this section is that the police have no authority to take a motorist into custody and then require him to go to the local stationhouse when that motorist has committed a misdemeanor traffic violation but is willing to sign the summons to court." Morton v. State, 452 So.2d 1361,1364 (Ala.Cr.App. 1984). Morton involved a prosecution for the possession of cocaine discovered after the defendant was stopped for speeding. The issue was "whether the police had the authority to impound Morton's vehicle." 453 So.2d at 1364. In that case the application of the Implied Consent Law was neither raised nor considered. The validity of the arrest, however, was directly in issue since "[t]he propriety of the impoundment [was] . . . grounded on the propriety of the initial arrest." Id. This court held that "[e]xcept for the exceptions provided by Section 32-1-4(b), a person arrested for a misdemeanor traffic violation is not subject to further detention for that offense once the arresting officer has obtained the necessary information and given the motorist the 'summons or notice' to appear." 452 So.2d at 1364 (quotingDaniels v. State, 416 So.2d 760, 765 (Ala.Cr.App. 1982).
Section 32-5-192(a) provides in pertinent part:
 "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor."
Section 32-5A-191 makes driving under the influence a criminal offense. Section 32-5A-191(g) provides: "A person who has been arrested for violating the provisions of this section shall not be released from jail under bond or otherwise, until there is less than the same percent by weight of alcohol in his blood as specified in subsection (a)(1) hereof [0.10 percent]."
In Maffett v. Roberts, 388 So.2d 972, 977 (Ala. 1980), the Alabama Supreme Court made it clear that "[a]n arrest for oneof the enumerated offenses furnishes the implied consent under the statute."
The "enumerated offenses" to which the Maffett court referred are those (1) which arose out of acts allegedly committed while the motorist was driving under the influence on the public highways of the state and (2) those for which the motorist was lawfully arrested. § 32-5-192(a).
Thus, in the instant case, neither the fact that the defendant's improper lane usage may have arisen because she was driving while under the influence, nor the fact that the arresting officer had probable cause to believe she was driving under the influence, authorized her being required to submit to a chemical test for intoxication because she was unlawfully taken into custody and arrested. Improper lane usage, a violation of § 32-5A-88, 1975 Code of Alabama, is — like the violation of most provisions of the Rules of the Road — a misdemeanor. See Ala. Code § 32-5A-8 (1975) ("It is a misdemeanor for any person to violate any of the provisions of this chapter or of Title 32, unless such violation is by this Chapter or other law of this state declared to be a felony"). Subject to the exceptions of § 32-1-4(b), custodial arrest is not authorized for improper lane usage. See Morton v. State, supra; Daniels v. State, supra. *Page 894 
The § 32-1-4(b) exceptions allow a custodial arrest for a misdemeanor traffic offense only under certain circumstances:
 (a) "Any person arrested and charged with an offense causing or contributing to an accident resulting in injury or death to any person";
 (b) "Any person charged with driving while under the influence of intoxicating liquor or of narcotic or other drugs";
 (c) "Any person whom the arresting officer shall have good cause to believe has committed any felony." Ala. Code § 32-1-4(b) (emphasis added).
The clear language of § 32-1-4(b) requires that, in order to fall within the custodial arrest exception to § 32-1-4(a), a motorist must be charged with DUI. Thus, unless one of the other exceptions (an accident resulting in personal injury or death or probable cause to believe the motorist has committed a felony) applies, probable cause to arrest for DUI, accompanied by an arrest for another misdemeanor traffic offense, is not sufficient to authorize custodial detention for chemical testing. Probable cause to arrest for DUI must be followed by an actual arrest, Ex parte Love, supra, and that arrest must be "lawful" within the meaning of § 32-1-4.
In Buchanan v. City of Auburn, 512 So.2d 145 (Ala.Cr.App. 1987), this court held that a motorist who had been arrested for speeding and required to submit to a breath test "was effectively placed under arrest for D.U.I. at the scene, although formal charges were not made until test results from the Intoxilizer 5000 were available." Because Buchanan does not follow the clear mandate of the "lawful arrest" provision of the implied consent statute when read in light of § 32-1-4, we now expressly overrule it.
Our decision will not hamper the efforts of dedicated law enforcement officers to curb the menace of the intoxicated driver on the highways of this state. If the officer has probable cause to believe that the motorist was driving under the influence (as the officers did here and inBuchanan), he should arrest for DUI. If he does not have probable cause to believe the motorist was driving under the influence then an arrest for another traffic offense may not be followed by a chemical test to confirm his suspicion of DUI. "The reason for requiring a prior arrest is that the blood test itself should not be a factor upon which the determination to arrest is made, and correspondingly, that probable cause should be established prior to the taking in order to prevent general investigatory searches into the suspect's person to determine whether he had been drinking." Comment, "Arrest RequirementsFor Administering Blood Tests," 1971 Duke L.J. 601, 613-14 (1971).
Because none of the § 32-1-4(b) exceptions to the misdemeanor traffic offense arrest provisions of § 32-1-4(a) applied to the defendant here, Officer Starr was not authorized to detain her following her arrest for improper lane usage. Her arrest was, therefore, not "lawful" within the meaning of § 32-5-192(a), and the results of her blood alcohol test were inadmissible in evidence.
REVERSED AND REMANDED.
All Judges concur. *Page 1231