BOWEN, Judge.
Donald Ward McCall was convicted in the circuit court of Montgomery County for the offense of driving under the influence of alcohol in violation of Ala.Code 1975, § 32-5A-191(a). He was given a suspended sentence of 30 days in jail, fined $300 and court costs, ordered to attend “DUI” school, and his driver’s license was suspended for a period of 90 days. McCall raises two issues on this appeal from, that conviction.
I
Prior to trial, the defendant filed a motion to suppress the oral statements he made and the result of the breath test for intoxication. He alleged that he was unlawfully detained, arrested without probable cause, and “requested but denied advice of attorney.” This motion was denied after an evidentiary hearing. On appeal, the ba *624 sis of the defendant’s argument is that he was taken into custody and questioned without being advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
In determining the facts of this case, this Court has considered the testimony presented at both the hearing on the motion to suppress and at trial. Henry v. State, 468 So.2d 896, 899 (Ala.Cr.App.1984), cert. denied, 468 So.2d 902 (Ala.1985). Although the defendant presented evidence which conflicts with and contradicts that presented by the State, “this Court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom.” Johnson v. State, 378 So.2d 1164, 1169 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala.1979).
The State’s evidence shows that at approximately 3:45 on the afternoon of October 25, 1987, Alabama State Trooper Robert Thompson stopped the vehicle being driven by the defendant for traveling 72 miles per hour on a two-lane highway with a speed limit of 55 miles per hour. Trooper Thompson testified that the defendant “was opening his door about the time [he] approached his vehicle.” Although the exact sequence of some of the events is unclear, it appears that, while the defendant was trying to tell the trooper that he was returning from a fishing trip in Florida, the trooper observed unopened liquor bottles on the back seat of the defendant’s vehicle, observed that the defendant had “real bloodshot eyes,” and smelled the “good strong odor” of alcoholic beverage on the defendant’s breath. The trooper testified that he formed the opinion the defendant had been drinking.
Trooper Thompson asked the defendant for his driver’s license and “asked” the defendant “to have a seat in the patrol car.” The trooper testified that he “asked him to come back to the car to fill out a speeding ticket and do a field test.” A review of Trooper Thompson’s testimony shows that he asked the defendant to have a seat in the patrol car for three reasons: (1) for their personal safety in avoiding the potential danger posed by passing vehicles, (2) to write the defendant a traffic ticket for speeding, and (3) to obtain evidence that the defendant had been driving under the influence.
In the patrol ear, Trooper Thompson told the defendant why he had stopped him and read the defendant his Miranda rights at 3:50 — approximately five minutes after he had stopped the defendant and “[ajlmost within fifteen to thirty seconds” after they were in the patrol car. A consideration of all of the trooper’s testimony convinces this Court, with no degree of uncertainty, that the trooper first informed the defendant of his Miranda rights and then “started on the DUI part.” He told the defendant that he knew he had been drinking and asked him “when did he take his last drink.” According to Trooper Thompson, the defendant replied that “he took it when he had been down fishing.”
In the patrol car, Trooper Thompson gave the defendant an Alcosensor test and a horizontal gaze nystagmus (HGN) test after which he informed the defendant that he was under arrest for DUI. The defendant was then handcuffed, placed in the back seat of the patrol car and taken to the Montgomery County Jail where his blood-alcohol level registered .136 percent on the Intoxilyzer 5000. The trooper testified that the defendant remained in the front seat of the patrol car for “probably five minutes maybe.”
We find that the motion to suppress was properly denied because, as a matter of fact, the evidence shows that the defendant was given his Miranda rights before being asked any questions about his drinking, and, as a matter of law, the defendant was not entitled to be warned of his Miranda rights because he was not subjected to custodial interrogation.[1]
*625 Even though the defendant was in custody, he was not entitled to be warned of his Miranda rights. The term “custody” has different meanings depending upon the context in which it is employed. Minnesota v. Murphy, 465 U.S. 420, 430, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984). A distinction must be made between custody for Miranda purposes and a seizure for purposes of the Fourth Amendment. “[I]t is clear that the stopping of a vehicle and the detention of its occupants constitutes a seizure within the meaning of the Fourth Amendment.” Ex parte Betterton, 527 So.2d 747, 749 (Ala.1988) (footnote omitted). See also Vickers v. State, 547 So.2d 1191 (Ala.1989) (“[W]e hold that an arresting officer has authority to arrest a violator for a traffic offense and, upon doing so, is under a statutory duty to release the violator only if the violator signs ‘a bond approved by the arresting officer,' agreeing to appear in court; thus, if one runs away before he signs the bond, he can be guilty of escape in the third degree.”).
“[A] person who is in custody for fourth amendment purposes, i.e., a person who has been ‘seized,’ is not necessarily entitled to ‘Miranda warnings.’ ” Blake v: State, 763 P.2d 511, 514 (Alaska App.1988). The “noneoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not ‘in custody’ for the purposes of Miranda.” Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). See also Pennsylvania v. Bruder, — U.S.-, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988); Boyd v. City of Montgomery, 472 So.2d 694, 698 (Ala.Cr. App.1985); Smith v. State, 470 So.2d 1365, 1367 (Ala.Cr.App.1985). “An ordinary traffic stop to ask a few questions and to conduct field sobriety tests on a driver suspected of operating under the influence does not amount to custodial interrogation so as to require a warning of the driver’s rights pursuant to Miranda....” State v. Lewry, 550 A.2d 64, 65 (Me.1988). Accord United States v. Tragash, 691 F.Supp. 1066, 1071 (S.D.Ohio, 1988); Lipscomb v. State, 188 Ga.App. 322, 372 S.E.2d 853, 853-54 (1988); People v. Schuld, 175 Ill. App.3d 272, 124 Ill.Dec. 819, 826, 529 N.E.2d 800, 807 (1988). “[MJotorists temporarily restricted or constrained and questioned regarding traffic infractions need not be advised of their Miranda rights.” United States v. Montoya, 632 F.Supp. 1069, 1075 (D.Del.1986). The Miranda warnings are not required before field sobriety tests are given, Boyd v. City of Montgomery, 472 So.2d 694, 698 (Ala.Cr. App.1985), or before directing a motorist to submit to a chemical test for intoxication. South Dakota v. Neville, 459 U.S. 553, 564, n. 15, 103 S.Ct. 916, 923, n. 15, 74 L.Ed.2d 748 (1983) (“[P]olice inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of Miranda.”); Langelier v. Coleman, 861 F.2d 1508, 1510, n. 3 (11th Cir.1988).
Although an investigatory stop for purposes of the Fourth Amendment does not necessarily trigger a right to Miranda warnings, “[i]f a motorist is detained under circumstances substantially more coercive than the typical traffic stop, and that coercion actually impairs the free exercise of the privilege against self-incrimination, Miranda warnings would be required.” Blake, 763 P.2d at 515. “If a motorist who has been detained pursuant to a traffic stop thereafter is subject to treatment that renders him ‘in custody’ for practical purposes, he will be entitled to the full panoply of protection prescribed by Miranda. ” Berkemer, 468 U.S. at 440, 104 S.Ct. at 3150.
The facts of this case do not support a finding that the defendant was “detained under circumstances substantially more coercive than the typical traffic stop,” or that he was subjected to treatment that rendered him in custody for practical purposes. “[T]he fact that the brief questioning of defendant took place in the patrol car [does not] convert an ordinary traffic stop into a custodial interrogation.” State v. Herem, 384 N.W.2d 880, 883 (Minn.1986) (quoted in State v. Clepper, 399 N.W.2d 574, 575 (Minn.App.1987)). See also Keaton v. State, 755 S.W.2d 209, 210 (Tex.App. 1988). In Pittman v. State, 541 So.2d 583, 585 (Ala.Cr.App.1989), this Court held, “Merely requiring a motorist to sit in a patrol car while the officer completes the *626 Uniform Traffic Ticket and Complaint does not constitute a custodial arrest.”
In Pittman, supra, the driver of the automobile was the co-defendant, Robi-nette. Robinette had been stopped for speeding. In the patrol car, he was informed that he was under arrest for speeding. While the state trooper was completing the UTTC, he smelled the odor of what he believed to be marijuana about Robi-nette’s person. The trooper asked him if he had been smoking marijuana and Robi-nette replied, “Well, yeah, we had a joint on the way to work this morning.” This Court held that Robinette “was properly arrested for speeding and was properly detained and placed in custody while Trooper Merritt was writing the traffic ticket.” This Court also held that the trooper was not required to advise Robinette of his Miranda rights before asking him about the marijuana.
“Once the trooper smelled the odor of marijuana on Robinette’s person, he was justified in asking him if he had been smoking marijuana without having advised Robinette of his Miranda rights.
“ ‘Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose “observations lead him reasonably to suspect” that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to “investigate the circumstances that provoke suspicion.” United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). “[T]he stop and inquiry must be ‘reasonably related in scope to the justification for their initiation.’ ” Ibid, (quoting Terry v. Ohio, supra, 392 U.S. [1], at 29, 88 S.Ct. [1868], at 1884 [20 L.Ed.2d 889 (1968)]). Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer’s suspicions. But the detainee is not obliged to respond. And, unless the detainee’s answers provide the officer with probable cause to arrest him, he must then be released. [Berkemer v.J McCarty, 468 U.S. [420] at 439-440, 104 S.Ct. [3138] [at] 3150 [82 L.Ed.2d 317 (1984)]. (Footnotes omitted.)’
“See also State v. Wilson, 529 So.2d 1061, 1063 (Ala.Cr.App.1988); McBride v. State, 355 So.2d 750, 752 (Ala.Cr.App. 1978).” Pittman, 541 So.2d at 586.
For these reasons, we find that the motion to suppress was properly denied. The defendant was not taken into custody for the purposes of Miranda until Trooper Thompson arrested him for DUI. Consequently, the statements the defendant made prior to that point were admissible against him.
II
The refusal of the trial judge to give the defendant’s requested jury charge has not been preserved for review. “No party may assign as error the court’s ... failing to give a written instruction ... unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection.” Rule 14, A.R.Cr.P.Temp. Counsel must set forth “specific grounds for his objection.” Ex parte Johnson, 433 So.2d 479, 480 (Ala.1983).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. We note that while the State presented evidence that the defendant had been warned of his Miranda rights, it presented no evidence of the specific warnings given the defendant and no evidence that he understood and waived his rights. See Robinson v. State, 399 So.2d 902, 903 (Ala.Cr.App.1981). This issue has not been raised at trial or on appeal. The defendant contends that he was never given his rights.