[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 406 
Walter Coyle Stone, the appellant, was convicted of driving under the influence of alcohol, was fined $500, and was sentenced to 30 days in jail. He raises two issues on this direct appeal from that conviction.
 I
The appellant argues that the roadside field sobriety tests that he was required to perform violated his state and federal constitutional rights against self-incrimination and that the trial court erred in refusing to suppress evidence regarding those tests.
"In reviewing a trial court's ruling on a motion to suppress, this Court may consider the evidence adduced both at the suppression hearing and at the trial. Henry v. State,468 So.2d 896, 899 (Ala.Cr.App. 1984), cert. denied, 468 So.2d 902 (Ala. 1985)." Wilsher v. State, 611 So.2d 1175, 1178 (Ala.Cr.App. 1992). The arresting officer, Tim Willis, was the only witness at the pre-trial suppression hearing and the only prosecution witness at trial. He stated that he was a member of the Huntsville Police Department's "DUI Task Force," and that the Task Force's "sole job [wa]s to ride around . . . and look for drunk drivers." R. 19-20. Officer Willis testified that around 12:50 a.m. on May 2, 1993, he was "patrolling the streets of Huntsville looking for people that [he] suspected of drinking and driving." R. 12. Willis stated that he observed an automobile "r[u]n off the curb" as it pulled out of a restaurant parking lot onto Bob Wallace Avenue. R. 21. Willis began to follow the automobile and observed that the vehicle "was weaving pretty heavily from left to right crossing the lines to the left and right side." R. 21. Willis stated that after the vehicle turned left onto Penn Street he turned on his blue lights and stopped the vehicle. The appellant was driving the automobile.
Officer Willis said that as he was radioing the stop to police headquarters, the appellant got out of his car "real slow." R. 23. According to Willis, the appellant "used his door to help himself out," held onto the door to stand up, then walked toward Willis' patrol car. Id. Willis testified that the appellant "was very slow and was having problems with his balance as he walked to the back of his car." Id. Although the appellant "didn't lean on the car, he . . . looked like he was having problems walking." Id.
Willis said that he met the appellant at the back of the appellant's car and observed that "it looked like he [had] urinated in his pants." R. 24. Willis stated that he "asked [the appellant] for a driver's license and told [the appellant] why" he had been stopped. R. 13. When defense counsel asked what specifically he said to the appellant concerning why he had been stopped, Willis stated that he informed the appellant that "[t]he reason I pulled him over was because he r[a]n over the curb and [was] weaving from left to right." R. 46. Willis testified that he "could smell a really strong odor of an unknown alcoholic beverage" on the appellant's person. R. 24. Willis also observed that the appellant's eyes were bloodshot and that his speech was slow and slurred. Id.
Officer Willis testified that he told the appellant that he wanted him to perform some field sobriety tests. Willis then had the appellant "stand with his feet together, facing his vehicle [and] away from [Willis]." R. 13. Willis stated, "At that time is when he told me he wanted to tell his mother what was going on." Id. Willis testified that he "told [the appellant] 'no.' " R. 13. He acknowledged, however, that he and the appellant "were close" to 2402 Penn Street, the address where the appellant resided with his parents. R. 40. When asked by defense counsel whether "[a]t that moment, then, it would [have been] reasonable for [the appellant] to assume that he could not leave the scene of what was going on," Willis responded, "Yes, sir." R. 13.
Willis testified that he then had the appellant perform four field sobriety tests: the *Page 407 
finger-count test; the one-leg-stand test; the finger-to-nose test; and the backwards count test. According to Willis, the appellant was unable to perform any of the four tests satisfactorily. At the completion of the tests, Willis "told [the appellant] to place his hands behind his back, he was under arrest for DUI." R. 28. Willis then transported the appellant to the city jail. When asked if he would have arrested the appellant if the appellant had refused to perform the field sobriety tests, Willis replied, "Judging from the way he would stand and talk, and other physical signs, yes, I would have." R. 16.
 A
The appellant entreats this Court to hold that Article I, § 6, of the Alabama Constitution of 1901, which provides, in pertinent part, that a person prosecuted for a criminal offense "shall not be compelled to give evidence against himself," is broader in scope and provides greater protection than the Fifth Amendment to the United States Constitution, which provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." (Emphasis added.) Even assuming that we were inclined to adopt the appellant's position, which we are not, we would not be at liberty to do so. The Alabama Supreme Court has made it clear that "despite the difference in language, the Alabama privilege against self-incrimination offers the same guarantee as that contained in the Federal Constitution." Ex parte Hill,366 So.2d 318, 322 (Ala. 1979). This Court is bound by the decisions of the Alabama Supreme Court, see Ala. Code 1975, §12-3-16, and may not abrogate those decisions, McLemore v.State, 562 So.2d 639, 649 (Ala.Cr.App. 1989).
 B
It is undisputed that Officer Willis did not give the appellant the warnings set forth in Miranda v. Arizona,384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), at any time during the roadside encounter. The appellant insists that this omission renders evidence of the roadside sobriety tests, or at least the verbal aspects of those tests,[1]
inadmissible. However, the prosecution is required to show thatMiranda warnings were given only when it seeks to introduce "verbal statements that [a]re both testimonial in nature and
elicited during custodial interrogation." See Pennsylvania v.Muniz, 496 U.S. 582, 590, 110 S.Ct. 2638, 2644, 110 L.Ed.2d 528
(1990) (emphasis added). Therefore, our first inquiry must be whether the appellant was subjected to custodial interrogation.
"Custodial interrogation" was originally defined inMiranda as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. The Supreme Court later elaborated on the "custody" aspect of this definition, stating that, in determining "whether a suspect is 'in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125,103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983).
 "The Supreme Court has also explained that 'the only relevant inquiry is how a reasonable man in the suspect's position would have understood the situation.' [Berkemer v. McCarty, 468 U.S. 420, 442, 440, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317
(1984).] A suspect is therefore 'in custody' for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the *Page 408 degree which the law associates with formal arrest.
The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation — that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."
United States v. Bengivenga, 845 F.2d 593, 596 (5th Cir.), cert. denied, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325
(1988) (emphasis added).
It is important to differentiate between the "custody" that triggers the requirement that Miranda warnings be given and a "seizure" that triggers Fourth Amendment implications. SeeMcCall v. State, 549 So.2d 623, 625 (Ala.Cr.App. 1989). TheMiranda decision was bottomed on the Fifth Amendment, which provides, among other things, the privilege against self-incrimination. See Miranda, 384 U.S. at 458-66,86 S.Ct. at 1619-24. In contrast, the Fourth Amendment provides, among other things, the right to be free of unreasonable seizures. See Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507,512, 19 L.Ed.2d 576 (1967); Harris v. United States,331 U.S. 145, 150, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399 (1947). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall,446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1979) (footnote omitted). Thus, it is clear that whether one is "in custody" for Miranda (Fifth Amendment) purposes is not the same inquiry as whether one has been "seized" for Fourth Amendment purposes. While " 'the core meaning both of "seizure" in the Fourth Amendment sense, and of "custody" in the Miranda
sense, appears to be the same[—]the restraint of a person's "freedom to walk away" from the police'[—][t]he critical difference between the two concepts" is one of degree. UnitedStates v. Bengivenga, 845 F.2d at 598 (quoting United States v.Brunson, 549 F.2d 348, 357 n. 12 (5th Cir.), cert. denied,434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107 (1977)). "[C]ustody arises only if the restraint on freedom [reaches] the degree associated with [a] formal arrest." United States v.Bengivenga, 845 F.2d at 598.
While the stop of a motorist for a traffic infraction unquestionably " 'constitute[s] a "seizure" within the meaning of [the Fourth Amendmen[t],' " the United States Supreme Court has made it clear that "persons temporarily detained pursuant to [routine traffic] stops are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420,436-37, 440, 104 S.Ct. 3138, 3148, 3150, 82 L.Ed.2d 317 (1984). In reaching this conclusion, the Court identified "[t]wo features of an ordinary traffic stop [that] mitigate the danger that a person questioned will be induced 'to speak where he would not otherwise do so freely.' " 468 U.S. at 437,104 S.Ct. at 3149.
 "First, detention of a motorist pursuant to a traffic stop is presumptively temporary and brief. The vast majority of roadside detentions last only a few minutes. A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way."
Id. The second feature identified by the Court was that "circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police." 468 U.S. at 438, 104 S.Ct. at 3149. These circumstances include the fact that "the typical traffic stop is public," which "both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse," and the fact that "the detained motorist typically is confronted by only one or at most two policemen." Id.
The first feature identified by the Court inBerkemer — the presumption of a temporary and brief stop — is a feature of most traffic stops in this state. Section32-1-4(a), *Page 409 
Ala. Code 1975, "prohibits traditional custodial arrests for [most] misdemeanor traffic offenses where the offender is willing to sign the [Uniform Traffic Ticket and Citation]."State v. Washington, 623 So.2d 392, 395 (Ala.Cr.App. 1993). In contrast, § 32-1-4(b) directs an arresting officer to take "any person charged with driving while under the influence of intoxicating liquor or of narcotic or other drugs . . . forthwith before the nearest or most accessible magistrate." Custodial arrests are therefore statutorily mandated where the offender is charged with any type of driving under the influence offense, and the motorist will not "be allowed to continue on his way" at the end of the stop. However, this mandate does not, standing alone, automatically convert the detention of a motorist suspected of driving under the influence to a custody situation requiring Miranda warnings.
In Berkemer, the Supreme Court observed that "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself," and determined that "the usual traffic stop is more analogous to a so-called 'Terry
stop,' see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968), than to a formal arrest." Berkemer,468 U.S. at 438-39, 104 S.Ct. at 3149-50. The Court then stated:
 "Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' Ibid. (quoting Terry v. Ohio, supra, 392 U.S. at 29, 88 S.Ct. at 1884.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda."
Berkemer, 468 U.S. at 439-440, 104 S.Ct. at 3150 (footnotes omitted; emphasis added).
Even taking into account § 32-1-4(b), a stop of a motorist whom an officer reasonably suspects of driving under the influence of alcohol or drugs is no different from a Terry
stop. Once the stop is effected, the detaining officer may, as part of the "moderate number of questions" asked of the motorist, request the motorist "to perform a simple balancing test," Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151; to recite the alphabet, see Pennsylvania v. Bruder, 488 U.S. 9,109 S.Ct. 205, 102 L.Ed.2d 172 (1988), Ex parte Ament, 1994 WL 35641 (Tex.App. 1994); and/or to perform a balancing exercise while counting aloud, see State v. Rodriguez, 173 Ariz. 450,844 P.2d 617, 619, 622 (1992); Commonwealth v. Ayre,31 Mass. App. Ct. 17, 574 N.E.2d 415, 417 rev. denied, 411 Mass. 1101,579 N.E.2d 1360 (1991). See generally Sides v. State, 574 So.2d 856,857-58 (Ala.Cr.App.), affirmed, 574 So.2d 859 (Ala. 1990);McCall v. State, 549 So.2d at 625; Boyd v. City of Montgomery,472 So.2d 694, 698 (Ala.Cr.App. 1985). If the officer's suspicions are dispelled during the brief detention and questioning, he must release the motorist.[2] If the officer's suspicions are confirmed, he may charge the motorist with driving under the influence, for which § 32-1-4(b) mandates a custodial arrest. The latter situation is analogous to the situation where an officer makes a Terry stop based on the reasonable suspicion that a felony has been committed, has his suspicion ripen into probable cause during the Terry detention, and then effects a custodial arrest under § 15-10-3(a)(3). *Page 410 
Although holding that traffic stops, like Terry stops, do not, as a general rule, require Miranda warnings, the United States Supreme Court observed in Berkemer: "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." 468 U.S. at 440,104 S.Ct. at 3150. The appellant argues that he was "in custody" to the degree requiring Miranda warnings from the time Officer Willis refused to permit him to leave to tell his parents what was occurring. In support of this argument, he points to the fact that Officer Willis acknowledged that it would have been reasonable at that point for him "to assume that he could not leave." Appellant's brief at 13.
As we recognized above, both a traffic stop and aTerry stop constitute a Fourth Amendment seizure and by their very nature mean that the person stopped is, at least briefly,not free to leave. See Berkemer, 468 U.S. at 436,104 S.Ct. at 3148. Whether the appellant was free to leave, however, is not the correct inquiry. Because it is uncontroverted that the appellant was not formally arrested until after the field sobriety tests were administered, the relevant inquiry is whether, while those tests were being administered, "a reasonable person in the [appellant's] position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." Bengivenga, 845 F.2d at 596. Accord United States v.Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987). In making this determination, "we 'must look at the totality of the circumstances involved.' " Smiley v. State, 655 So.2d 1074,1085 (Ala.Cr.App. 1993) (quoting United States v. Rorex,737 F.2d 753, 755 (8th Cir. 1984)).
We are aware that one commentator has stated that "[a] formal arrest or a statement [by the police] to the suspect that he or she is not free to leave is sufficient to indicate to a reasonable person that he or she is in custody" forMiranda purposes. 3 W. Ringel, Searches Seizures, Arrest Confessions § 27.3(b) (1989). While a formal arrest unquestionably triggers the Miranda requirements, we do not agree that a statement by the police that the suspect is not free to leave is sufficient in all cases to indicate that the suspect is "in custody." In fact, Professor Ringel cites one case where, in a Terry-type situation, the Massachusetts Supreme Court held that "[t]he fact that the officer would not let the defendant leave until he had talked to him did not make the interrogation custodial." Commonwealth v. Podlaski,377 Mass. 339, 385 N.E.2d 1379, 1383 (1979), cited at 3 W. Ringel, § 27.3(b) n. 59. See also People v. Dunnegan, 151 Ill. App.3d 973, 104 Ill.Dec. 961, 503 N.E.2d 823, 827 (defendant who took homicide victim to hospital and was told by one of the officers present not to leave was not in custody for Miranda
purposes), appeal denied, 115 Ill.2d 545, 110 Ill.Dec. 460, 511 N.E.2d 432 (1987).
To reiterate, a person who is the subject of a Terry stop or a traffic stop is not, at that moment, free to go. The mere fact that the officer articulates this fact during the detention simply does not, standing alone, convert a Terry stop or traffic stop into a custodial situation requiring Miranda
warnings. It is, however, clearly a factor that must be considered in determining whether, under the totality of the circumstances, the person stopped was actually "in custody" for purposes of Miranda.
In this case, the appellant was stopped by a single officer on a public street, apparently in close proximity to his own home, and the detention was conducted in that one location. The record does not disclose the length of the detention, but it appears to have been only long enough for Officer Willis to examine the appellant's driver's license and to administer the field sobriety tests. The appellant was not handcuffed before the administration of the field sobriety tests. CompareLamar v. State, 578 So.2d 1382, 1384 (Ala.Cr.App.) (" '[g]enerally and except in the most exceptional circumstances, a person must be considered under arrest once he has been handcuffed' "), cert. denied, 596 So.2d 659 (Ala. 1991). There is no evidence that the appellant was physically abused by Officer Willis or that he was threatened or coerced into taking the tests. In fact, Willis indicated *Page 411 
that the appellant could have refused to perform the tests. Furthermore, there is not even the slightest suggestion that Officer Willis drew his weapon at any time during the detention. Compare United States v. Hanks, 821 F. Supp. 1425,1429 (D.Kan. 1993) ("[b]y pointing his gun at the defendant and informing him he could not leave, [the officer] exceeded theTerry stop investigative detention"), appeal dismissed,24 F.3d 1235 (10th Cir. 1994).
Although Willis stated that he would have arrested the appellant had the appellant refused to perform the field sobriety tests, there is nothing in the record to indicate that he conveyed this fact to the appellant. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time."Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151. Officer Willis merely refused the appellant's request to leave to tell his parents what was occurring. This is a far cry from indicating that the appellant was under arrest or that he would be arrested if he did not perform the field sobriety tests.
Considering all of the circumstances of this case, including the fact that Officer Willis refused the appellant's request to be allowed to go tell his mother what was occurring, we are of the opinion that while a reasonable person who had committed no offense would have believed that he was not, at that moment, free to go, he would not have believed that he was under formal arrest. See United States v. Bengivenga, 845 F.2d at 598-600 (bus passenger who was requested to leave bus at fixed checkpoint and to accompany officers to checkpoint trailer for questioning was not "in custody" for Miranda purposes, although she had clearly been "seized" for Fourth Amendment purposes). Cf. 1 W. LaFave and J. Israel, Criminal Procedure § 3.8(b) (1984) (discussing dimensions of a permissible Terry stop). Consequently, although the appellant had been "seized" for Fourth Amendment purposes, he was not "in custody" for Fifth Amendment purposes when the field sobriety tests were administered; therefore Miranda warnings were not required.
 II
The appellant contends that the trial court committed reversible error in instructing the jury.
The appellant was charged with driving under the influence of alcohol in violation of Ala. Code 1975, § 32-5A-191(a)(2). C.R. 10. The prosecution was therefore required to "prove that the [appellant] 'was under the influence of alcohol [i.e., that he had consumed alcohol] to the extent that it affected his ability to operate his vehicle in a safe manner.' " Frazier v.City of Montgomery, 565 So.2d 1255, 1257 (Ala.Cr.App. 1990) (quoting Ex parte Buckner, 549 So.2d 451, 453 (Ala. 1989)).
Much of the evidence presented by the prosecution is set forth in Part I of this opinion. To summarize briefly, the arresting officer, Tim Willis, testified at trial that he observed the appellant's vehicle "r[u]n off the curb" as it exited a restaurant parking lot, then observed the vehicle "weaving pretty heavily from left to right" as it proceeded along a public road. R. 21. When Willis stopped the appellant he smelled "a really strong odor of an unknown alcoholic beverage" on the appellant's person. R. 24. Willis observed that the appellant appeared to have "problems with his balance," that he walked very slowly, that his eyes were bloodshot, that his speech was slow and slurred, and that he appeared to have urinated in his pants. R. 23-24. Willis also described the appellant's deficient performance of four field sobriety tests. R. 24-28. Willis stated that, in his opinion, the appellant was "under the influence of an alcoholic beverage to the extent [that] he could not safely operate a motor vehicle." R. 29.
After the appellant was arrested, he was transported to the Huntsville Police Station, where he refused to take an Intoxilyzer 5000 breath test. On cross-examination by defense counsel, Willis stated that although "several drugs" were discovered in the appellant's pocket when he was being "booked" at the police station, the appellant did not indicate that he had consumed any drugs or pills. R. 32. *Page 412 
The appellant testified in his own behalf and admitted that he had consumed approximately two and one-half glasses of wine and between two and two and one-half beers in the approximately four-hour period prior to his arrest. He maintained, however, that his intoxication that night was actually the result of the combined effect of alcohol and prescription medication, and therefore his ability to safely operate his vehicle, if impaired at all, was not impaired solely by the consumption of alcohol. He testified that at varying times during the day of his arrest, he had ingested Valium, Lasix (a medication to control his blood pressure), and Naprosyn (an anti-inflammatory medication for his back). Additionally, he explained that he had spilled a soft drink in his lap as he exited the restaurant parking lot and that any weaving of his vehicle was a result of his attempting to deal with the spilled drink. He also asserted that he performed the field sobriety tests in accordance with the instructions Officer Willis had given him.
During its oral charge to the jury, the trial court gave the following instructions:
 "The defendant is charged with the offense of driving under the influence of alcohol. [The complaint] charges that he did unlawfully drive or [was] in actual physical control of a vehicle while under the influence of alcohol. It is not illegal to consume alcohol and drive a vehicle. What is unlawful is to operate a motor vehicle after consuming alcohol to the extent that the ability to safely operate a motor vehicle is adversely affected. So what the prosecution must prove beyond a reasonable doubt is not only was the defendant under the influence of alcohol, but that he was under the influence of alcohol to the degree that it adversely affected his ability to safely operate a motor vehicle.
 "The prosecution does not have to prove that the defendant's body was free from all substances other than alcohol. The prosecution must prove to the required degree that the defendant was under the influence of alcohol to the extent that it adversely affected his ability to safely operate a vehicle. The prosecution does not have to show that the only substance that the defendant was under the influence of was alcohol or that the only substance which affected the defendant's ability to drive safely was alcohol."
R. 105-06 (emphasis added). The appellant asserts that the emphasized portion of the instructions the appellant asserts was erroneous.
At the outset, we note that this issue was not properly preserved for our review. Although defense counsel complied with Rule 21.2, A.R.Crim.P., by making a timely and specific objection to the emphasized portion of the court's oral charge, the trial judge never ruled on that objection. After defense counsel made his objection, the following occurred:
"THE COURT: Very well, anything further?
"MR. RECORD [defense counsel]: No, Your Honor.
"THE COURT: Ask the jury to come back." R. 109.
With regard to jury instructions, as with virtually every other matter, " '[a]bsent an objection to an alleged errorand a ruling by the trial court, there is nothing for this Court to review.' " Ex parte Beavers, 598 So.2d 1320, 1322
(Ala. 1992) (emphasis added) (quoting Biddie v. State,516 So.2d 846 (Ala. 1987)). The trial court's response to the objection — "Very well" — did not constitute a ruling on the objection. See Hammond v. State, 502 So.2d 843, 845
(Ala.Cr.App. 1986) (trial court's response of " 'All right. Well the time is up Ms. Tanner' " did not constitute ruling on defendant's objection), cert. denied, 482 U.S. 917,107 S.Ct. 3193, 96 L.Ed.2d 681 (1987); Seay v. State, 479 So.2d 1338,1342 (Ala.Cr.App.) (trial court's response of " 'Thank you' " did not constitute ruling on defendant's objection), cert. denied, 479 So.2d 1343 (Ala. 1985). " 'In the absence of a ruling, a request for a ruling or objection to the court's failure to rule, there is nothing preserved for appellate review.' " Johnson v. State, 542 So.2d 341, 345 (Ala.Cr.App. 1989) (quoting Moore v. State, 457 So.2d 981, 988 (Ala.Cr.App. 1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757,84 L.Ed.2d 820 (1985)). *Page 413 
Moreover, even had the issue been properly preserved, there was no reversible error in the trial court's instructions. As we noted above, the appellant was charged with violating of Ala. Code 1975, § 32-5A-191(a)(2), and the prosecution had the burden of proving that the appellant " 'was under the influence of alcohol [i.e., that he had consumed alcohol] to the extent that it affected his ability to operate his vehicle in a safe manner.' " Frazier v. City of Montgomery, 565 So.2d at 1257 (emphasis added). The prosecution clearly met this burden, seeJones v. State 579 So.2d 66, 69 (Ala.Cr.App. 1991); Frazier v.City of Montgomery, 565 So.2d at 1258-59, and did so with evidence that was confined to proof that the appellant was under the influence of alcohol — Willis testified that he smelled "a really strong odor of an unknown alcoholic beverage" on the appellant's person, R. 24, and that, in his opinion, the appellant was "under the influence of an alcoholic beverage to the extent [that] he could not safely operate a motor vehicle," R. 29. (Emphasis added.)
The five subsections of § 32-5A-191(a) provide "alternative methods of proving" the "single offense of driving under the influence." Bartlett v. State, 600 So.2d 336, 342 (Ala.Cr.App. 1991). See also Sisson v. State, 528 So.2d 1159, 1163 (Ala. 1988). Proof of a violation of one subsection will not support a conviction where the defendant is charged with violating a different subsection. See Sturgeon v. City of Vestavia Hills,599 So.2d 92, 94 (Ala.Cr.App. 1992). Consequently, had theprosecution introduced evidence that the appellant was under the "combined influence of alcohol and a controlled substance," it would have proved a violation of § 32-5A-191(a)(4), rather than a violation of § 32-5A-191(a)(2), and the jury instruction complained of would clearly have been error.
In this case, however, it was the defense that introduced evidence tending to show that the appellant was under the "combined influence of alcohol and a controlled substance" when Officer Willis stopped him. Here, as in State v. Nix,535 So.2d 866, 868-69 (La.App. 1988), the appellant "offer[ed] as a defense to the charge of driving while under the influence of alcohol the fact that he was committing another [form of the DUI] offense, driving under the [combined] influence of [alcohol and] prescription drugs." To accept this proposition would permit any person charged with driving under the influence of alcohol to refuse to submit to a blood alcohol test and then to defeat the prosecution's case by claiming to have been, instead, under the combined influence of alcohol and a controlled substance. Such a position is untenable.
While we do not necessarily approve the actual language used by the trial court in its instruction in this case,[3] we find no reversible error in the complained of instruction. When this Court reviews alleged error in jury instructions, "the challenged portion is not to be isolated or taken out of context, but [instead must be] considered along with other portions of the charge." Alexander v. State, 601 So.2d 1130,1133 (Ala.Cr.App. 1992). Accord Adams v. State, 587 So.2d 1265,1269 (Ala.Cr.App. 1991). The trial court correctly and clearly explained to the jury not once, but twice, that the prosecution was required to prove that the appellant "was under the influence of alcohol to the extent that it adversely affected his ability to safely operate a vehicle." We do not think that his further instruction that the "prosecution does not have to show that the only substance that the defendant was under the influence of was alcohol or that the only substance which affected the defendant's ability to drive safely was alcohol" would have been understood by reasonable jurors *Page 414 
"to negate the need to find a causal relationship between the defendant's consumption of alcohol and his diminished ability to drive safely." Commonwealth v. Stathopoulos, 401 Mass. 453,517 N.E.2d 450, 452 (1988). Therefore, any error occasioned by the instruction was harmless. See Rule 45, A.R.App.P.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Two of these tests, the finger-count test and the one-leg-stand test, had a verbal component. For the finger-count test, the appellant was instructed to touch his thumb to the little finger of the same hand, then to each of the other fingers on that same hand and back again to the little finger, while counting aloud "1-2-3-4, 4-3-2-1." R. 24. For the one-leg-stand test, the appellant was instructed to raise one foot "about six inches off the ground," to keep his "toes pointed out" and his hands to his sides, and to "count out loud by thousands to thirty. One, one thousand, two, one thousand, and all the way to thirty." R. 25-26. The backwards count test was entirely verbal, with the appellant being asked to "count backwards from 68 to 47." R. 27.
[2] The motorist may, of course, be given a citation for any traffic offense actually committed.
[3] We agree with the Massachusetts Supreme Court that "an appropriate instruction in these circumstances might be similar to the following: You are instructed that, if the defendant's ability to [safely] operate [a motor vehicle] was [affected] by [his consumption of] alcohol, the defendant has violated [§32-5A-191(a)(2)] even though some other cause, also operating on the defendant while he or she was driving, tended to magnify the effect of the liquor or concurred in causing the defendant's diminished capacity to operate [a vehicle] safely. It is no defense, under the statute, to show the existence of such concurring cause, so long as the influence of liquor remained as one of the causes of the defendant's diminished capacity." Commonwealth v. Stathopoulos, 401 Mass. 453,517 N.E.2d 450, 453 n. 4 (1988).