COBB, Judge,
dissenting, from unpublished memorandum.
The admissibility of the 1-5000 test depends on whether the appellant was actually charged by Uniform Traffic Ticket and Complaint (“UTTC”) with driving under the influence of alcohol under § 32-5A-191(a)(2) at the scene of the traffic stop. It is not clear from the arresting officer’s testimony whether the UTTC charging the appellant with DUI under § 32-5A-191(a)(2) was issued at the scene of the stop or after the appellant was taken to the jail and the 1-5000 test was administered. Therefore, I must respectfully dissent from the majority’s holding. I find the following testimony important to this issue.
*243 “Q. [Officer Kathy Norwood], you had not, indeed advised Mr. Cofield that he was under arrest at the time you had the Intoxilyzer 5000 test administered, isn’t that a fact?
“A. That is correct.
“Q. And, in fact, if he had passed that Intoxilyzer 5000 test, you would have released him, wouldn’t you?
“A. Yes, sir.
[[Image here]]
“Q. First of all, you had not informed him that he was under arrest for DUI or anything else?
“A. That’s correct, sir.
“Q. In fact, in the final analysis you didn’t arrest him for anything but DUI, did you?
“A. That’s correct.
“Q. I mean, no reckless driving or weaving and bobbing or speeding or anything else?
“A. No, sir.
“Q. Secondly, you would have released him had he passed the Intoxilyzer 5000 test; he would have been free to walk out at that moment; is that a fact?
“A. Yes, sir.”
R. 27-29.
In addition, there exists confusion over when the UTTC was issued and what offense it charged. The record reflects that three UTTC’s were in fact issued because of clear errors and that modifications may have been made to the last UTTC issued. It is not clear exactly what transpired regarding the UTTC. Defense counsel submitted to the court that the original UTTC issued to the appellant did not specify whether he had violated § 32-5A-191(a)(l) or (a)(2). R. 36.
The majority cites Hays v. Jacksonville, 518 So.2d 892, 894 (Ala.Cr.App.1987), as support for affirming the appellant’s conviction. In Hays, the defendant’s car was stopped because the vehicle was “weaving.” When the officer requested to see the defendant’s driver’s license he smelled alcohol inside the car. The defendant then failed two field sobriety tests and was arrested for improper lane usage. He was transported to the police station and given an 1-5000 test. The defendant’s blood alcohol content was .16 percent. The defendant was then arrested and charged with DUI. This court determined that “[b]ecause none of the § 32-l-4(b) exceptions to the misdemeanor traffic offense arrest provisions of § 32-l-4(a) applied to the defendant here, Officer Starr was not authorized to detain [the defendant] following her arrest for improper lane usage. [The defendant’s] arrest was, therefore, not ‘lawful’ within the meaning of § 32-5-192(a), and the results of her blood alcohol test were inadmissible in evidence.” Hays, at 894. I recognize that the facts in Hays are distinguishable from those on the present case. The crux of the Hays decision was that the appellant was charged with improper lane usage at the scene of the traffic stop instead of with DUI. In the present case, it appears that the only charge ever contemplated by the officer was DUI. However, I believe that the principles set for in Hays are applicable to the present ease.
I agree with the majority’s finding in the present case that there was probable cause to arrest the appellant for DUI under 32-5A-191(a)(2) — being “under the influence of alcohol” — at the scene of the traffic stop. However, in Hays, this court stated that probable cause to arrest for DUI by itself is insufficient to justify a custodial detention of a defendant for chemical testing. Hays, at 894. (This court has defined custody by stating, “Custody arises only if the restraint on freedom [reaches] the degree associated with [a] formal arrest.” Stone v. City of Huntsville, 656 So.2d 404 (Ala.Cr.App.1994)). We said in Hays that a defendant can be tested only following an actual arrest for DUI that is “lawful” within the meaning of § 32-1-4.[1] It was not established that this *244 was the sequence of events in the present ease. The statute makes DUI a criminal offense and subjects a motorist actually arrested for DUI to custodial detention and chemical testing. The results of the chemical test may be used against a motorist in a DUI prosecution and also to determine when the motorist becomes eligible for release from jail. See. § 32-5A-191(g); § 32-5-192(a). Section 32-5-192(a) states:
“Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor.”
(Emphasis added).
Stone also set out what should happen in the typical DUI case.
“Even taking into account § 32~l-4(b), a stop of a motorist whom an officer reasonably suspects of driving under the influence of alcohol or drugs is no different from a Terry stop. Once the stop is effected, the detaining officer may, as part of the ‘moderate number of questions’ asked of the motorist, request the motorist ‘to perform a simple balancing test,’... to recite the alphabet ... and/or to perform a balancing exercise while counting aloud.... If the officer’s suspicions are dispelled during the brief detention and questioning, he must release the motorist. If the officer’s suspicions are confirmed, he may charge the motorist with driving under the influence, for which § 32-l-^(b) mandates a custodial arrest. The latter situation is analogous to the situation where an officer makes a Terry stop based on the reasonable suspicion that a felony has been committed, has his suspicion ripen into probable cause during the Terry detention, and then effects a custodial arrest under § 15-10~3(a)(3).
Stone, supra (footnote and citations omitted).
Here, it is unclear whether the appellant was “actually charged” with DUI before he was taken to the jail and given the 1-5000 test. It appears from the record that he was actually charged with DUI for the first time after he failed the 1-5000 test. Therefore, I cannot conclude that the 1-5000 test was properly admitted into evidence and I believe the appellant was improperly convicted under 32-5A-191(a)(l) — having 0.10 percent or more by weight of alcohol in his blood. In light of the above, I must respectfully dissent.

. Section 32-l-4(b) allows a custodial arrest for a misdemeanor traffic offense when a person is "charged with driving while under the influence of intoxicating liquor or of narcotic or other drugs.” In Stone we stated, "Custodial arrests are therefore statutorily mandated where the offender is charged with any type of driving under the influence offense, and the motorist will not 'be allowed to continue on his way' at the end of the stop." 656 So.2d at 409 (first emphasis added; second emphasis original).