Appellant was convicted of manslaughter and sentenced to five years' imprisonment.
This case involved a collision between two automobiles on Thanksgiving night, 1982. Appellant, who had been drinking, was driving north in the southbound lane of Old Lexington Road when he struck a car being driven by Patsy Kay Byrd. The collision, which occurred at the crest of a hill, was head-on, and Miss Byrd was killed instantly.
The single issue raised on appeal is whether the trial court committed reversible error in allowing the results of a photoelectric intoximeter test into evidence. Appellant contends that the proper predicate was never laid for such evidence; specifically that it was never proven that the test was performed according to the methods approved by the State Board of Health.
The officer who performed the test indicated that, an hour after the collision, appellant had a blood alcohol level of .14.
Section 32-5A-194 (Supp.), Code of Alabama 1975, which deals with admissibility of chemical test results, reads in part as follows:
 "Upon the trial of any civil, criminal or quasi-criminal action on proceeding arising out of acts alleged to have been committed by any person while driving or in actual control of a vehicle while under the influence of alcohol or controlled substance, evidence of the amount of alcohol or controlled substance in a person's blood at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such a chemical test is made the following provisions shall apply: *Page 166 
 "(1) Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this section shall have been performed according to methods approved by the state board of health and by an individual possessing a valid permit issued by the state board of health for this purpose. The state board of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state board of health. The state board of health shall not approve the permit required in this section for making tests for any law enforcement officer other than a member of the state highway patrol, sheriff or his deputies, a city policeman or laboratory personnel employed by the department of forensic sciences."
In the case of McGough v. Slaughter, 395 So.2d 972 (Ala. 1981), the Supreme Court construed § 32-5-193, Code of Alabama 1975, from which the above-quoted statute evolved with only minor changes. The court, speaking through Chief Justice Torbert, stated:
 "The legislature has . . . remedied many of the problems involved in laying a foundation for admission of intoxication test results, at least where the action arises from operation of a vehicle . . . [A] party offering results from tests shown to be given in conformity with the statute is relieved of the burden of laying the extensive predicate necessary for admission of scientific test results."
Thus, there are two methods by which the results of a photoelectric intoximeter test can be placed into evidence. Either it must be shown that the test was administered in conformity with the statute, or the traditional evidentiary foundation used to admit results from scientific tests must be laid. McGough, supra. Whetstone v. State, 407 So.2d 854
(Ala.Cr.App. 1981).
At trial, state trooper Elree Strickland, who performed the intoximeter test, testified about his qualifications as follows:
 "Q: Now, have you had any training in the method to give a breathalyzer test?
"A: Yes, I have.
"Q: What kind of training have you had?
 "A: Okay. It's a 40 hour course, one week. I took the course in Montgomery given by the Alabama Department of Public Health and licensed by the Health Department of the State of Alabama on this test. I've had retraining almost yearly ever since that date, and I took this in 1971.
"Q: Are you licensed by the state?
"A: Yes, I am.
 "Q: And that license qualified you to give the breathalyzer test?
"A: Yes, they do.
"Q: Is your license still in effect?
"A: Yes, it is."
Nowhere in Trooper Strickland's testimony was the foundation laid to indicate that he conducted the test according to methods approved by the State Board of Health. A copy of the board's rules and regulations governing the administration of the test was never offered into evidence. Even though the witness was licensed to run the intoximeter,
 "[t]here is no rebuttable presumption that a duly licensed operator knew and used methods and techniques approved by the state board of health in administering the test. Commander v. State, 374 So.2d 910 [Ala.Cr.App.] (1978)."
The test was not shown to be performed in conformity with the requirements of the statute.
Did the state establish the traditional, non-statutory foundation required for the introduction of scientific test results? We find that the foundation was not laid. *Page 167 
In Ex Parte Dolvin, 391 So.2d 677 (Ala. 1980), our Supreme Court outlined the factors which determine the admissibility of a scientific test. These include:
 "Whether a test is readily assignable to any particular well-established and defined scientific discipline; whether the test is either applied by a mechanical device or purports to decipher specific data requiring scientific paraphernalia to produce; whether the test tends to trench very closely upon an ultimate issue in the case; whether the test is based on a syllogism that has a major premise or assertion that a fact of legal interest is or is not true, while that fact is only probably true; whether the test related to mental state as opposed to physical condition; and whether the test attempts a scientific diagnosis of testimony and its veracity by mechanical means."
The Supreme Court has also stated that to insure the reliability of test results, they must be "from generally accepted tests conducted under conditions which do not impeach the reliability of the testing procedure." McGough, supra.
To establish a predicate for admitting the test results, without reliance on the statute, there should be evidence that:
(1) the theory underlying the photoelectric intoximeter test is valid and generally accepted as such;
(2) the intoximeter is a reliable instrument and generally accepted as such;
(3) the intoximeter test was administered by a qualified individual who could properly conduct the test and interpret the results; and
(4) the instrument used in conducting the test was in good working condition and the test was conducted in such a manner as to secure accurate results.
See, E. Imwinkelried, Evidentiary Foundations, p. 92 (1980).
The record does not support a finding that the evidentiary foundation was laid for the admission of appellant's intoximeter test results. This is not a case in which independent proof of intoxication was so overwhelming as to bring it into the ambit of Estes v. State, 358 So.2d 1050
(Ala.Cr.App. 1977), cert. denied, 358 So.2d 1057 (Ala. 1978). This cause is reversed and remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.