BOWEN, Presiding Judge.
The appellant, Jerry W. Morgan, Jr., was convicted in Vestavia municipal court of speeding and of driving under the influence (DUI). He appealed to Jefferson Circuit Court and, in a trial de novo, was convicted by a jury of the same offenses. The circuit court imposed a fine of $250 for the DUI conviction and ordered the appellant to pay court costs and to attend DUI school. The appellant was fined $10 for the speeding conviction and was ordered to pay court costs. In this appeal from the circuit court convictions the appellant challenges the admissibility of the results of the Intoxilyzer 5000 test.
Officer Richard Anderson of the Vestavia Police Department testified that he stopped the appellant for speeding at approximately 9:30 p.m. on June 19, 1992. According to Officer Anderson, when the appellant got out of his car, he walked toward Officer Anderson in a “shuffl[ing] manner,” had difficulty removing his wallet from his back pants pocket, dropped his wallet twice while attempting to remove his driver’s license, dropped his driver’s license when handing it to Officer Anderson, “was unsteady on his feet as he was trying to do this,” and “was sort of loud” in his speech. R. 30-33. Officer Anderson also stated that there was “a strong odor of alcoholic beverage” on the appellant’s person. R. 33. When the appellant failed several field sobriety tests, Officer Anderson arrested him for DUI, placed him in the back seat of the patrol car with his hands handcuffed behind him, and transported him to Vestavia City Hall.
Officer Cassandra Barnes testified that she arrived at the location where Officer Anderson had stopped the appellant as Officer Anderson was giving the appellant the field sobriety tests. She stated that the appellant’s speech was slurred, that he was “swaying,” and that he did not perform the field sobriety tests. While Officer Anderson transported the appellant to city hall in his patrol car, Officer Barnes drove to city hall in her own patrol car. Officer Barnes testified that, at City Hall, she read an implied consent form to the appellant,[1] then asked him if he understood what she had read and if he would submit to the test. According to Officer Barnes, the appellant responded affirmatively to the two questions. Officer Barnes then used an Intoxilyzer 5000 machine to test the appellant’s breath. The breath test showed that the appellant’s blood alcohol level was .163%.
*1049 Where a chemical test to determine blood alcohol level is performed pursuant to the implied consent statute, Ala.Code 1975, § 32-5-192, the test results may be admitted either by “showing] that the test was administered in conformity with [§ 32-5A-194]” or by laying “the traditional evidentiary foundation used to admit results from scientific tests.” Moore v. State, 442 So.2d 164, 166 (Ala.Cr.App.1983). Because the statutory predicate is easier to establish than the traditional scientific test predicate, most prosecutors, including the prosecutor in this case, choose to use the statutory predicate. To establish the statutory predicate, the prosecutor must show all of the following:
“(1) that the motorist was lawfully arrested before being directed to submit to a test, (2) that the law enforcement officer had reasonable grounds to believe that the motorist was driving under the influence, (3) that the test administered was designated by the proper law enforcement agency, Alabama Code § 32-5-192(a), (4) that the test was performed ‘according to methods approved by the [department of forensic sciences],’ and (5) [that the test was performed] ‘by an individual possessing a valid permit issued by the [department of forensic sciences] for this purpose.’ Alabama Code 1975, § 32-5A-194(a)(l).”
Boyd v. City of Montgomery, 472 So.2d 694, 699 (Ala.Cr.App.1985).[2] See also Ex parte Bush, 474 So.2d 168, 170 (Ala.1985).
Officer Anderson’s testimony clearly established the first two requirements of the statutory predicate: the appellant was lawfully arrested before being directed to submit to the Intoxilyzer 5000 test and there were reasonable grounds to believe that the appellant had been driving under the influence. Officer Barnes testified that “the official and authorized means by the City of Vestavia Hills to test persons suspected of being ... intoxicated” was the “Intoxilyzer 5000 instrument,” R. 56; that at the time of the trial and on June 19, 1992 (the date of the appellant’s arrest), she was certified by the department of forensic sciences to operate the Intoxilyzer 5000 instrument, R. 59, 61-62; and that in administering the test she followed “operating procedures ... in accordance with the rules and regulations of the Alabama Department of Forensic Sciences,” R. 70. This was clearly sufficient to establish the last three requirements of the statutory predicate. See Woods v. City of Dothan, 594 So.2d 238, 241 (Ala.Cr.App.1991); Stubstad v. City of Orange Beach, 575 So.2d 1240, 1241-42 (Ala.Cr.App.1991).
The appellant also argues that a specific operational procedure for operating the Intoxilyzer 5000 instrument was not followed in this case. During the testimony of Officer Barnes, the City introduced the “Operational Procedure” for administering the Intoxilyzer 5000 test. At the top of this document appears the following: “WARNING: ‘Subject must be under observation by the arresting officer and/or operator for a period of 20 minutes before the test is administered.’” C.R. 36 (emphasis added).
Officer Anderson testified that the appellant was continuously under his observation from the time of the stop, which occurred at approximately 9:30 p.m., until the test was administered at approximately 10:30 p.m. Officer Barnes stated that the appellant was under her observation for approximately 30 minutes after they reached city hall before she administered the test. The appellant testified that he was left alone in a room at city hall and that Officer Barnes came into the room only 5 minutes before she *1050 administered the test. It appears from the appellant’s testimony, however, that Officer Anderson was within his sight at all times. Because Officer Anderson was the arresting officer, his observation of the appellant would satisfy the requirement in the operation procedure that is quoted above. In any event, although the appellant did not make a specific motion to suppress the test results, the circumstances are similar to a motion to suppress and the conflicting testimony regarding this particular aspect of the statutory predicate presented a credibility question for the trial court. Cf. Jackson v. State, 589 So.2d 781, 784 (Ala.Cr.App.1991) (“the “weight and credibility to be attached to the testimony of witnesses at a suppression hearing is a question for the trial judge’ ”).
There was no error in the admission of the Intoxilyzer 5000 test results. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. Officer Barnes read this form into the record: "The implied consent reads: ‘I am now directing you to take an approved chemical test of your breath for the purpose of determining the alcohol content of your blood. If you refuse to take this test, your privilege of operating a motor vehicle will be suspended for a period of 90 days or one year if it is later determined that this is a second or consequential refusal within a five-year period. If you are operating a commercial vehicle and you refuse, you will be disqualified from operating a commercial vehicle for a minimum of one year.' " R. 64-65. See Ala.Code 1975, § 32-5-192(a) and (c).

. When Boyd was decided in 1985, it tracked the pertinent language of § 32-5A-194(a)(l) as that code section then read: "Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this section shall have been performed according to methods approved by the state hoard of health and by an individual possessing a valid permit issued by the state hoard of health for this purpose.” (Emphasis added.) In 1988, § 32-5A-194 was amended "by transferring certain Forensic Science responsibilities in the State's Chemical Test for Intoxication Act from the Department of Public Health to the Department of Forensic Sciences.” 1988 Ala. Acts 1058, Act No. 88-660. As amended, § 32-5A-194(a)(1) provides in pertinent part: “Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this section shall have been performed according to methods approved by the department of forensic sciences and by an individual possessing a valid permit issued by the department of forensic sciences for this purpose.”