704 So.2d 1034 (1997)
Ex parte State of Alabama.
(In re Stephen Philip MEININGER
v.
STATE of Alabama).
1951735.
Supreme Court of Alabama.
May 23, 1997.
Bill Pryor, atty. gen., and Jim R. Ippolito, Jr., asst. atty. gen., for petitioner.
Michael D. Mastin, Albertville, for respondent.
HOUSTON, Justice.
Stephen Philip Meininger was convicted of violating Ala.Code 1975, § 32-5A-191(a)(1), because he was driving when his blood alcohol level was 0.10% or more.[1] He was sentenced to 15 days in the county jail; his sentence was suspended, and he was placed on unsupervised probation for 24 months. The Court of Criminal Appeals, relying on Curren v. State, 620 So.2d 739 (Ala.1993), reversed Meininger's conviction, writing and holding as follows:
"The state's evidence tended to show that on the evening of April 8, 1995, [Meininger] was stopped by Alabama State Trooper David Dodgen for driving with an inoperable headlight. Trooper Dodgen testified that when he approached [Meininger's] vehicle to ask to see [Meininger's] driver's license, he smelled alcohol and saw an unopened container of beer on the front seat. He testified that after [Meininger] sat in his police vehicle for several minutes, he had [Meininger] perform some field sobriety tests. Trooper Dodgen testified that [Meininger] was unable to satisfactorily perform the tests.
"Dodgen testified that he then placed [Meininger] under arrest for DUI and transported him to the county jail.... *1035 Dodgen testified that [at the jail] he waited 20 minutes and then performed two breathalizer tests on [Meininger]. He testified that the results of the first test showed a 0.155% blood alcohol level and [that] the result of the second test showed a 0.165% blood alcohol level.
"....
"... [Meininger] first contends that the trial court erred by receiving into evidence Trooper Dodgen's testimony regarding [Meininger's] physical condition at the time he was stopped, the results of field sobriety tests, and his opinion of [Meininger's] sobriety. [Meininger] contends that because he was indicted under § 32-5A-191(a)(1), this testimony should not have been received into evidence....
"... In [Curren v. State, 620 So.2d 739 (Ala.1993)], the Alabama Supreme Court... noted that § 32-5A-191(a)(1) is an `illegal per se' law, and that the rebuttable presumption of § 32-5A-194(b)that the defendant was intoxicated if his blood alcohol content was shown to be 0.10%did not apply to a prosecution under § 32-5A-191(a)(1). In that case, this court had held that § 32-5A-194(b) created a rebuttable presumption of intoxication in cases prosecuted under § 32-5A-191(a)(1) and that failure to charge the jury that this presumption was rebuttable `invaded the province of the jury and amounted to a directed verdict of guilt based upon the results of the blood alcohol test alone.' Curren v. State, 620 So.2d 737, 738 (Ala.Crim.App. 1992), rev'd, 620 So.2d 739 (Ala.1993).
"The Alabama Supreme Court in Curren stated that § 32-5A-191(a)(1) makes driving a vehicle with a blood alcohol content of 0.10% a crime without reference to the effect that alcohol has on the driver and that, therefore, intoxication is not an element of the offense. In addition, the Alabama Supreme Court held that while a defendant `can offer evidence to rebut the State's evidence that his blood alcohol content was 0.10% when he was found driving, or in actual physical control of, a vehicle,' he cannot introduce evidence to rebut the fact that he was intoxicated, because, as the Alabama Supreme Court stated, whether the defendant was intoxicated `is not relevant to the charge of driving or being in actual physical control of a vehicle with a blood alcohol content of 0.10% or greater.' Curren, 620 So.2d at 743.
"During [Meininger's] trial, Trooper Dodgen testified concerning his observations of [Meininger's] physical condition at the time he stopped [Meininger], the results of the field sobriety tests he administered, and his opinion of [Meininger's] sobriety. [Meininger] contends that, because a defendant charged under § 32-5A-191(a)(1) is not allowed to rebut the presumption of intoxication by presenting evidence of his physical condition at the time of the offense, the state should also be prohibited from presenting this type of evidence.
"....
"Because the section [Meininger] was prosecuted under, § 32-5A-191(a)(1), is an `illegal per se' law, the state is required to prove only that a defendant's blood alcohol level is 0.10% or higher. Testimony by the state trooper regarding [Meininger's] physical condition, his performance in field sobriety tests, and the trooper's opinion of [Meininger's] sobriety all go toward showing that [Meininger] was intoxicated and guilty of driving under the influence, a violation of § 32-5A-191(a)(2). `Evidence of any offense other than that specifically charged is prima facie inadmissible.' Nicks v. State, 521 So.2d 1018 (Ala.Crim. App.1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988).
"The Alabama Supreme Court ruled in Curren that because intoxication is not an element of § 32-5A-191(a)(1), a defendant may not introduce evidence to rebut the presumption of intoxication if the defendant's blood alcohol level was 0.10% or greater. In accordance with the Supreme Court's ruling in Curren, we now hold that in prosecutions brought under § 32-5A-191(a)(1), the state may not introduce evidence of the nature of that introduced in the present case concerning the defendant's intoxication. The trial court erred by receiving into evidence Trooper Dodgen's *1036 testimony concerning [Meininger's] intoxication."
Meininger v. State, 704 So.2d 1030, 1030-32 (Ala.Crim.App.1996).
We granted the State's petition for certiorari review. The State argues that the decision of the Court of Criminal Appeals (concerning the admissibility of Trooper Dodgen's testimony about Meininger's physical condition at the scene) was based on an erroneous reading of Curren. We agree; therefore, we reverse.
Alabama's implied consent statute, Ala.Code 1975, § 32-5-192, provides, in pertinent part, as follows:
"Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 90 days; provided if such person objects to a blood test, the law enforcement agency shall designate that one of the other aforesaid tests be administered."
(Emphasis added.) In Morgan v. City of Vestavia Hills, 628 So.2d 1047, 1049 (Ala. Crim.App.1993), the Court of Criminal Appeals wrote:
"Where a chemical test to determine blood alcohol level is performed pursuant to the implied consent statute, Ala.Code 1975, § 32-5-192, the test results may be admitted either by `show[ing] that the test was administered in conformity with [§ 32-5A-194]' or by laying `the traditional evidentiary foundation used to admit results from scientific tests.' Moore v. State, 442 So.2d 164, 166 (Ala.Cr.App.1983). Because the statutory predicate is easier to establish than the traditional scientific test predicate, most prosecutors, including the prosecutor in this case, choose to use the statutory predicate. To establish the statutory predicate, the prosecutor must show all of the following:
"`(1) that the motorist was lawfully arrested before being directed to submit to a test, (2) that the law enforcement officer had reasonable grounds to believe that the motorist was driving under the influence, (3) that the test administered was designated by the proper law enforcement agency, Alabama Code § 32-5-192(a), (4) that the test was performed "according to methods approved by the [department of forensic sciences]," and (5) [that the test was performed] "by an individual possessing a valid permit issued by the [department of forensic sciences] for this purpose." Alabama Code 1975, § 32-5A-194(a)(1).'

"Boyd v. City of Montgomery, 472 So.2d 694, 699 (Ala.Cr.App.1985). See also Ex parte Bush, 474 So.2d 168, 170 (Ala.1985)."
See, also, Hays v. City of Jacksonville, 518 So.2d 892 (Ala.Crim.App.1987), wherein the Court of Criminal Appeals correctly observed:
"Under Alabama's Chemical Test for Intoxication Act (Implied Consent Law), Ala. Code 1975, § 32-5-191, et seq., a motorist must have been `lawfully arrested' before any chemical test to determine intoxication is conducted in order to authorize the admission into evidence of the test results."
The record in the present case indicates that the prosecutor elected to establish the statutory predicate, see § 32-5A-194(a), for the admission of the breathalizer tests performed on Meininger.[2] Trooper Dodgen testified, in pertinent part, as follows:

*1037 "Q. Did you have occasion on that particular day to come into contact with Stephen Meininger?
"A. Yes, I did.
"Q. What were the circumstances surrounding that contact?
"A. A traffic stop.
"....
"Q. What drew your attention to Mr. Meininger and his vehicle?
"A. I was traveling south on County Road 109. I met Mr. Meininger's vehicle. He had a headlight out. I turned around then.
"Q. Do you recall what kind of vehicle he had?
"A. 1979 Chrysler.
"Q. Were there any passengers in the vehicle?
"A. No.
"Q. Mr. Meininger was the only person in the vehicle?
"A. Yes, he was.
"Q. Was he seated behind the wheel?
"A. Yes.
"Q. Was he driving the car?
"A. Yes.
"Q. Driving without a headlight, is that a traffic offense?
"A. Yes, it is.
"Q. Did you effect the stop based on that?
"A. Yes, I did.
"Q. Tell us step by step what you did once you effected the stop.
"....
"Q. Once you approached Mr. Meininger, what, if anything, did you notice about him or his person?
"....
"A. When I made the initial approach and asked him for his license, I smelled the odor of alcohol in the vehicle and also observed an unopened container of beer in the front seat of the vehicle.
"Q. At what point did you ask Mr. Meininger to exit his vehicle?
"A. Shortly right after that.
"Q. Did he do so?
"A. Yes, he did.
"....
"Q. Once he exited the vehicle, did you have occasion to have a conversation with him or talk with him?
"A. Yes. After I had him exit the vehicle, I had him return to my vehicle and sit in my vehicle for a few minutes. After *1038 that I had him exit my vehicle and perform some field sobriety tests.
"Q. Based on your knowledge, skill and training and his performance in these tests, do you have any opinion as to his performance?
"....
"A. From my initial observation with the subject, smelling the odor, the way he exited his vehicle, and then after performing the field sobriety test, I felt like he was under the influence of alcohol.
"Q. Did you notice anything about his physical appearance other than the odor of alcohol?
"A. His eyes were bloodshot. He was unsteady on his feet. When he exited the vehicle, he leaned on his car door.
"Q. Did you notice anything about his clothing?
"A. Disheveled; not a real neat appearance.
"Q. What time of the evening was this?
"A. The initial stop was made at 10:24 p.m.
"Q. Were there many cars on the road?
"A. There were some other vehicles on the road, yes.
"Q. Did you at any time have the defendant outside of your viewing or outside of your observation?
"A. No.
"Q. Once you made your observation as to his being under the influence, what did you do?
"A. I placed him under ... arrest for driving under the influence.
"....
"Q. Did you transport him to the county jail?
"A. Yes, I did.
"Q. Why did you transport him to the county jail?
"A. For incarceration and administration of the breathalizer test.
"Q. The breathalizer test, is that the Intoxilizer 5000?
"A. That's correct.
"Q. What is the purpose of the Intoxilizer 5000?
"A. To obtain a blood alcohol reading.
"....
"Q. Does your employer, the Alabama State Troopers ..., do y'all recognize the I-5000 as the appropriate means for testing blood alcohol?
"A. Yes.
"Q. Are you trained in the use of the I-5000?
"A. Yes, I am.
"....
"Q. Mr. Mastin [the defendant's attorney] has stipulated to your credentials. You are certified; is that correct?
"A. That is correct.
"Q. And you can operate the I-5000?
"A. Yes.
"Q. The training you received, is that recognized by the Department of Forensic Sciences?
"A. Yes.
"Q. Exactly what steps does one go through in administering the I-5000?
"....
"Q. When you and Mr. Meininger arrived at the sheriff's department, did you observe Mr. Meininger for a period of time?
"A. Yes, I did.
"Q. How long did you observe him?
"A. A little over twenty minutes.
"Q. Are you required to observe the person for a period of time?
"A. Right.... [W]e have to observe them for twenty minutes before we give them the test.
"Q. Did you ever lose sight of Mr. Meininger?
"A. No.
"....
"Q. Did you perform the test according to your certification?
"A. Yes, I did.
"Q. Is there a checklist that you must go through?
"A. Yes.

*1039 "Q. Did you follow that checklist?
"A. Yes, I did."
Trooper Dodgen's testimony clearly established the requirements of the statutory predicate. Of particular importance here is the fact that Trooper Dodgen's testimony established that Meininger had been lawfully arrested for driving under the influence of alcohol before being directed to submit to the Intoxilizer 5000 test and that there was probable cause to believe that Meininger had been driving while under the influence of alcohol. It was incumbent upon the prosecutor to lay the necessary predicate for the admission of the results of the breathalizer test. We hold, therefore, that the trial court did not err in denying Meininger's motion to exclude Trooper Dodgen's testimony concerning his observations of Meininger's physical condition at the time of the arrest. In so holding, we note that Meininger's reliance on, and the Court of Criminal Appeals' interpretation of, Curren was misplaced. Curren does not stand for the proposition that evidence of an arresting officer's observations of a defendant's physical condition at the scene is inadmissible in a prosecution under § 32-5A-191(a)(1). In Curren, we characterized the issue as follows:
"The issue in this case is whether the presumption that a person with `0.10 percent or more by weight of alcohol' is `under the influence' applies in a case in which the defendant is charged under § 32-5A-191(a)(1) with driving or being in actual physical control of a vehicle with 0.10% or more by weight of alcohol in his blood."
620 So.2d at 740. As previously stated in note 2, we held in Curren that the presumptions discussed in § 32-5A-194(b) do not apply in a prosecution under § 32-5A-191(a)(1), because intoxication is not an element of the offense of driving with a blood alcohol content of 0.10% or greater (i.e., whether the defendant had consumed "such an amount of alcohol as to affect his ability to operate a vehicle in a safe manner" is not a consideration in a prosecution under § 32-5A-191(a)(1), see Ex parte Buckner, 549 So.2d 451 (Ala.1989) (defining "under the influence of alcohol" as used in § 32-5A-191(a)(2))). Meininger was prosecuted for violating § 32-5A-191(a)(1) and the trial court instructed the jury on the elements of that offense. Trooper Dodgen's testimony concerning Meininger's physical condition at the time of the arrest was relevant to establish probable cause to arrest. Evidence of probable cause to arrest was essential to establishing one of the material elements of the State's case-in-chiefthat the results of the breathalizer tests showed Meininger's blood alcohol content to be 0.10% or greater.[3]
For the foregoing reasons, the judgment of the Court of Criminal Appeals is reversed and the case is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, COOK, and SEE, JJ., concur.
ALMON, J., dissents.
ALMON, Justice (dissenting).
I think the Court of Criminal Appeals correctly applied the law as stated by this Court in Curren v. State, 620 So.2d 739 (Ala.1993). I dissented in Curren, and I would vote to overrule that case if the question whether to do so was presented. I agree with the Court of Criminal Appeals that, given the law as it existed at the time of Meininger's trial, the circuit court erred in allowing Trooper Dodgen to testify as to Meininger's physical condition.
Meininger squarely presented to the circuit court his position that the Curren rule, which prevents a defendant charged under § 32-5A-191(a)(1) from presenting evidence that he was not in an impaired condition, should prevent the State from presenting evidence that he was in an impaired condition. Furthermore, he offered to stipulate that Trooper Dodgen had probable cause to arrest him, so that the inadmissible and unfairly prejudicial evidence (as the rule of Curren would have it) of his impaired condition *1040 would not be "admissible" to prove probable cause. The State's refusal to accept this stipulation is a telling indication that the State wanted to put on evidence of his physical condition to show not only that his blood alcohol content was above .10%, but also that he was driving in an impaired condition. This was unfairly prejudicial because, under Curren, Meininger was precluded from presenting any evidence that he was not in fact in an impaired condition.
After the qualification of the jury, the trial began with the following proceedings outside the presence of the jury:
"THE COURT: Let the record reflect that all the parties are present with their attorney. You have something, Mr. Mastin?
"MR. MASTIN [attorney for Meininger]: Yes, sir, Judge. I've got an oral motion in limine requesting that the state be prohibited from [introducing] testimony regarding the defendant's sobriety or lack thereof at the time of the stop itself; specifically, the roadside sobriety test and the officer's opinions as to his condition at the time of the arrest, in that this is a charge in the indictment; specifically, (a)(1) [i.e., § 32-5A-191(a)(1)], which the two elements are that he was in control of the automobile, and while in control, his blood alcohol was.10[%] or above. It's my understanding that we would be prohibited from showing in this situation that Mr. Meininger's driving was not impaired or that he was stone cold sober. None of that testimony is relevant. We would, on the flip side, ask that the state not be allowed to produce evidence showing his level of intoxication outside the test results itself.
"THE COURT: Ms. Hammond?
"MS. HAMMOND [assistant district attorney]: Judge, the state would respond simply by saying that the state must prove that there was probable cause to make the arrest for DUI, and as a basis of this, it was just the trooper's observation, any tests that he might have performed to form that opinion and that observation and what he may have observed in and around the defendant and about the defendant, and I think it's most relevant and that it is part of (a)(1). I would concede that we have two elements to prove; that is true. We do not have to prove that he was impaired at the time he was driving. However, we are not using the field sobriety test to show that he was impaired; we are using the field sobriety test to support our probable cause for arrest for DUI and therefore administering the I-5000 later by the trooper in this particular case.
"THE COURT: Anything else?
"MR. MASTIN: Judge, we would also state for the record that we have offered to stipulate that Officer Dodgen, the state trooper in this matter, stopped the defendant for a missing headlight. Upon investigation, he determined that the defendant had been drinking and had probable cause to make an arrest at that point in time. We have offered to stipulate to that. I understand that the state has not agreed to that.
"MS. HAMMOND: Judge, I don't think the state is in a position to stipulate to that as our probable cause to make the arrest. I think it's important that the jury understand and be informed as to the basis of the probable cause.
"MR. MASTIN: Judge, that goes to the exact contrary to what she is saying, wanting to show that as to the proof of the matter of probable cause. Why would the jury be concerned whether he was knock-down drunk if all they charged him with was (a)(1)? I think it just shows prejudicial
"THE COURT: WellGo ahead; I'm sorry.
"MR. MASTIN: That's my point.
"THE COURT: Okay. I thought you were about through. I wasn't trying to cut you off. I was beginning to think out loud.
"Is the state planning on going into detail as to the field sobriety test?
"MS. HAMMOND: No, sir. The case I showed you, [Morgan v. City of Vestavia Hills, 628 So.2d 1047 (Ala.Crim.App. 1993) ], it shows what the state must put forth, and part of that was the field sobriety test and the officer that testified as to the field sobriety test. We would be able to ask questions asking, not necessarily *1041 what field sobriety test he asked the defendant to perform, but his conclusion as to his performance based on his observations, training, knowledge and skill. We wouldn't ask him to go into great detail.
"Also, there would be testimony from other observations other than the field test: Eyes, demeanor, person, others.
"THE COURT: I am going to deny the motion in limine."
The majority uses ellipses to omit what I consider significant portions of the record. The following question is quoted by the majority, but the objection and the ruling on it are not:
"Q. Once you approached Mr. Meininger, what, if anything, did you notice about him or his person?
"MR. MASTIN: We object at this time and renew our earlier objection from the motion in limine objecting to any testimony as to Mr. Meininger's physical condition at the time and as grounds state that he's charged with Code Section (a)(1). None of his physical condition is relevant to that particular prosecution.
"THE COURT: I'm going to overrule."
Again, shortly thereafter:
"Q. Based on your knowledge, skill and training and his performance in these tests, do you have any opinion as to his performance?
"MR. MASTIN: Judge, we renew our objection. We can state that in full if the Court feels like it's necessary.
"THE COURT: Do you assign the same grounds you stated before?
"MR. MASTIN: Yes, sir.
"THE COURT: Overruled."
I would hold that this evidence was admissible as tending to prove that Meininger was in fact "under the influence" of alcohol. I would similarly hold that a defendant should be allowed to introduce evidence that his condition was not impaired. Under the Curren rule, however, I do not agree with the majority's rationale, which allows the State to introduce evidence of the defendant's impaired condition, supposedly to show that the arresting officer had probable cause to arrest the driver suspected of driving under the influence. I would hold that, so long as a defendant offers to stipulate to probable cause, as Meininger did, evidence of impaired condition is inadmissible because, according to the Curren rule, it is not relevant to the offense charged and unfairly prejudices the defendant by calling to the jury's attention extraneous matters.
In Curren v. State, 620 So.2d 739 (Ala. 1993), the majority of this Court held that evidence that the defendant's condition was not impaired is not a defense to a charge of violating Ala.Code 1975, § 32-5A-191(a)(1), driving while "[t]here is 0.10 per cent or more by weight of alcohol in his blood." I pointed out in my dissent several reasons why I thought the majority decision was wrong. For example:
"As can be seen from § 9-102 of Act No. 80-434, [Ala. Acts 1980,] as well as from the title of § 32-5A-191, the offense prohibited by that section is `driving while under the influence of alcohol.' Thus, any appearance from § 32-5A-191(a)(1) that it creates what the majority calls a `per se' offense is contradicted by the section's title, as well as by § 32-5A-194(b)(3). If the offense is driving under the influence of alcohol, it would seem that the defendant can rebut the evidence of the blood alcohol test by evidence that his driving was not influenced by alcohol."
620 So.2d at 744 (Almon, J., dissenting).
Of course, I would prefer to see Curren overruled, so that both sides can offer evidence of impairment or the lack thereof as bearing on the true question of whether the defendant was driving under the influence of alcohol, as I explained in my dissent in Curren.
I note that the majority holds that § 32-5-192, Ala.Code 1975, the implied consent law, applies to prosecutions under § 32-5A-191(a)(1), even though the implied consent law applies only to situations where a person is suspected of "driving ... while under the influence of intoxicating liquor":
"(a) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of *1042 determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor."

§ 32-5-192(a) (emphasis added). I agree with the majority that the clear legislative intent was for this statute to apply to prosecutions under § 32-5A-191(a)(1). However, unlike the Curren majority and the majority today, I also think that the clear legislative intent was for the presumptions of § 32-5A-194(b) (and, of course, the admissibility provisions of § 32-5A-194(a)) to apply to a prosecution under § 32-5A-191(a)(1).
I also note in regard to § 32-5-192(a) the provisions regarding "lawfully arrested" and "reasonable grounds." Certainly, if a defendant contests the traffic stop or the administration of a blood alcohol test, the question either of "lawful arrest" pursuant to "probable cause" or of "reasonable grounds" would make evidence of the defendant's condition admissible. Even if the defendant does not contest these issues, the evidence might ordinarily be part of the State's case-in-chief. However, Meininger offered to stipulate to probable cause, lawful arrest, and reasonable grounds to administer the test, so that the unfairly prejudicial evidence of his condition (again, unfairly prejudicial only because of Curren) would not be admissible. I think it was error to deny Meininger's motion in limine and to overrule his objections.
It is difficult to register my vote in this case, because, if Curren remains the law, then I think the Court of Criminal Appeals correctly held that the State should not have been allowed to introduce the trooper's testimony that Meininger did not pass a field sobriety test. Because Curren precluded Meininger from meeting this prejudicial evidence with any evidence to rebut it, I dissent from the reversal of the judgment of the Court of Criminal Appeals. However, I continue to believe that Curren was wrongly decided. The strained reasoning of this case, deriving from what I consider to be incorrect reasoning in Curren, further highlights the problems arising from Curren's "per se" offense of driving while "there is 0.10 percent or more by weight of alcohol in [the driver's] blood." If Curren were overruled, as I think it should be, then I would hold that a trial court should allow an arresting officer to testify as to a driver's condition.
I understand the need for enforcement of the laws against driving under the influence of alcohol or controlled substances, and I agree that law enforcement officers should be allowed to testify as to the condition of a driver they have arrested under suspicion of violating these statutes. However, to allow an officer so to testify over pointed objections such as were made in this case allows the State, as Meininger's response to the State's petition says, to "have its cake and eat it too." To me, it is patently unfair to allow the State to introduce evidence that is irrelevant to the offense charged but will prejudice the defendant in the jury's eyes, and then to preclude the defendant from introducing any evidence that might answer or diminish the prejudicial effect of the State's evidence. I would overrule Curren v. State, but I would affirm the reversal by the Court of Criminal Appeals of Meininger's conviction, because Meininger was deprived of his fundamental right to a fair trial. I respectfully dissent.
NOTES
[1] Ala.Code 1975, § 32-5A-191(a)(1), as it read at the time of Meininger's offense, stated:

"(a) A person shall not drive or be in actual physical control of any vehicle while:
"(1) There is 0.10 per cent or more by weight of alcohol in his blood...."
This statute was later amended, effective August 9, 1995, to change the percentage to 0.08%.
[2] This Court held in Curren, supra, that Ala.Code 1975, § 32-5A-194(b), was not applicable to a prosecution under § 32-5A-191(a)(1), stating:

"As noted above, our own statute, § 32-5A-191(a)(1), Ala.Code 1975, enacts a prohibition against driving, or being in actual physical control of a vehicle, with a blood alcohol content of 0.10% or greater. In order to find the defendant guilty of violating § 32-5A-191(a)(1), the jury is not required to find that the defendant was `under the influence' of alcohol; therefore, the jury need not `presume,' in accordance with § 32-5A-194, that he was under the influence from evidence admitted as to his blood alcohol content in order to convict. For that reason, the trial court did not err in refusing to instruct the jury on the rebuttable presumptions found in § 32-5A-194(b), Ala.Code 1975."
620 So.2d at 742. However, the reasoning used by this Court in that case does not apply in this case so as to prohibit the application of § 32-5A-194(a) to prosecutions under § 32-5A-191(a)(1), even though § 32-5A-194(a) refers to "acts alleged to have been committed by any person while driving or in actual control of a vehicle while under the influence of alcohol." Section 32-5A-194(a) sets out a procedure for establishing the admissibility of chemical analyses of a "person's blood, urine, breath or other bodily substance." Although this section on its face appears to be applicable only in prosecutions for "driving under the influence," it is illogical to conclude that the Legislature did not intend for this procedure to be available in a prosecution under § 32-5A-191(a)(1), where, as we held in Curren, the sole inquiry is whether the defendant was driving or in actual physical control of a vehicle while there was 0.10 percent or more by weight of alcohol in his blood. Our holding in Curren that § 32-5A-194(b) was not applicable in a prosecution under § 32-5A-191(a)(1) was based on our conclusion that the Legislature intended § 32-5A-191(a)(1) to be an "illegal per se law." It was, thus, illogical in Curren for this Court to hold that the presumptions discussed in § 32-5A-194(b) were applicable in a prosecution under § 32-5A-191(a)(1). Notwithstanding the Legislature's use of the phrase "driving ... while under the influence of alcohol" in § 32-5A-194(a), we nonetheless believe that our conclusion with respect to the applicability of § 32-5A-194(a) in prosecutions under § 32-5A-191(a)(1) is consistent with legislative intent.
[3] We note that Meininger did not request that a limiting instruction be given to the jury, and we express no opinion as to whether a limiting instruction of some kind should be given upon request.